Thors 725 8th Avenue v. Guna Katili. May it please the court. I probably mispronounced that. I've had trouble up to now. Guna Taliki. Guna Taliki, you got it. Thank you. May it please the court. Good morning. My name is Thomas Hoffman. I represent the Guna Talikis who are the defendant appellants, counterclaimants, and cross appellees. The deduction of the party's intention that is dispositive to this appeal is governed by three basic rules of contract construction. One, that words and phrases should be given their plain meaning. Second, an interpretation of a contract that renders terms superfluous or meaningless is avoided. And third, for a condition to be material so as to require literal performance, the agreement must contain unmistakable language of materiality. I start out with the assumption that Judge Engelmeyer knows all that. The decision, unfortunately, disregarded each of these principles. To begin, this case is not about a material breach for failure to The issue presented is the construction of the 2013 amendment which allowed for the release of the guarantors. The amendment presumed a rent default as the release provided for the discharge of all rent obligations past or present. The guarantors were released from their obligation because the landlord received On condition. On a condition. Okay. First, let's begin with the condition of timeliness, all right? That seems to be the relevant one. It's irrelevant. The relevant one. They were released provided they were, I mean, look, we have a whole bunch of agreements here. One of them makes time of the essence in terms of a vacator of the premises. Am I correct? That's, well, that is correct. But it did not apply for three reasons. All right. Reason number one, it was a 2009 stipulation which, in our view, only applied to that stipulation. But assuming that time is of the essence was transported to this 2013 release, even if time of the essence applied, the clause was waived because for the previous four years it was never enforced, even though the tenant was in continued default. And it is fundamental fairness that you do not apply a clause which you never enforced because you have misled the party that you are not going to enforce it. So in this particular case, the tenant was never alerted. Now time is of the essence. So I do not believe that that clause applied. And even if it did apply, in my view, since we all agree that there was no prejudice at all to the landlord because of the seven-day delay, that at least equity would intervene to avoid this forfeiture. The other condition is the broom-clean condition, which the Court may be referring to. I don't know why you're calling it a forfeiture because the money that's at stake is money that was promptly after notice and that time was of the essence. Well, as I said, time was not of the essence. There was nothing written in the 2013 amendment that time was of the essence. They are incorporating time is of the essence from a release which clearly states that it only applies to this stipulation. And as I said, they never enforced time is of the essence. And it is unfair. And we've given some cases on that. Basic fundamental fairness, that if you can't lie behind a log and not enforce something and then say, now I am. You know, not only that, the landlord never, not only didn't alert the tenant, but they worked together in facilitating a 60-day departure without saying, look, you better get out. And then, Your Honor, just to show that it had no meaning, this case was filed days before they knew whether or not they would literally comply with the departure date. Wouldn't that be a sufficient shot across the bow to tell you that they're dead serious about enforcing this deadline? Well, in my view. Then all you had to do was just leave. Right. Well, and we tried to leave. It wasn't a residence. It was a place of business. Excuse me? It wasn't a residence. You didn't have to pack up all your books and pictures. It was a place of business. It was a four-story building which had to be vacated. They could not leave. They tried to leave on the 7th. The moving van broke down, and then they had to offload all of the merchandise, and they left on the 7th. Excuse me, they left seven days late. Well, it didn't take seven days to fix the moving van. Well, the record was not developed, but to say that we are going to, and if I may speak to whether or not there was a forfeiture. It would have been a forfeiture if they had accelerated all of the rent for the remaining term of the lease, which they might have been able to do, but then if you called it a forfeiture, it would sound like a real forfeiture. Well, Your Honor, we're not saying it's an impermissible forfeiture. You are. No, we're not. We're not saying it's an impermissible forfeiture. This was a permissible forfeiture. But you say it's barred by equity. Well, we believe equity intervenes to avoid a forfeiture whether it's – You're saying it's an unenforceable forfeiture, in which case it doesn't do your adversaries any good to get the benefit of it. It should not be invoked because the breach was trivial and did not cause any harm. And under the principles of equity, equity will intervene to avoid a $1.8 million forfeiture, which it was because it was monies that no longer was due absent a default. So that money was no longer due. So fine, it's a permissible forfeiture, but equity will intervene to avoid such a forfeiture when there is a trivial, non-prejudicial breach. You've reserved a couple minutes for rebuttal. Yes, I did. And we'll hear you then. Okay, thank you. I'm just going to make sure that Judge Winter is still on the line. I'm here. All right, thank you. Good morning, Your Honors. Good morning. Joseph Lee Madelon for the appellee. May I reserve three minutes on my cross appeal? No. Okay, then I'll— Let's just get this all done. Fine. Frankly, I think Judge Engelmayer got it absolutely correct. He wrote— So I looked through the record. I didn't see any place where you urged the tenants to move because you needed the place or you were counting on them to leave by a certain date. I didn't see that. Did I miss it? The landlord was not under an obligation to explain to the tenant why they needed the space quickly. What the landlord did do was send a notice to the tenant terminating the lease, by the way, not as of July of 2014, but as of May 7th, and said, you need to be out or we're going to take steps to regain possession. We didn't, of course, then say because we're bringing in another tenant, nor was it our obligation, but we very clearly told the tenant they must surrender possession by May 7th. They didn't leave until July 14th. So, you know, very clearly— There was no letter between May and July saying, when are you leaving? I need the place or anything like that. In fact— So that they would get a sense that time was of the essence. In fact, there was conversations between me and the tenant in which I said, we want you out, and he kept coming up with numerous excuses as to why he was staying. But it was very clearly communicated to the tenant that we were not tolerating his staying late. And, in fact, as Judge Jacobs pointed out, we even commenced this action while he was still in possession. You commenced it after the deadline set by your client, but before the deadline undertaken by the other side. That's correct. So it would have been our position that regardless if he left on July 7th, within his own unilaterally set deadline, he still would have owed us money. But, as Your Honor pointed out, he would have had at least a fighting chance to make his arguments if he left on time. But even under his own letters or notices, he didn't leave on time. Now, what's important to focus on here is that we're talking about conditions, not covenants. And the distinction is, it's not like he's promising to leave at a certain date. But if he satisfies these conditions, which are set by agreement, then there will be consequences where he could have been relieved of past liabilities. What we're talking about here is money that the landlord, in its own good graces, forgave in the past, but these were conditional forgiveness. And the tenant didn't properly take advantage in two ways. There was taxes and— And actual rent. And a rent reduction. Correct. Under New York law, when a landlord sets a date certain for vacating, the departure is timely only if the tenant abides by it. But what else do you rely on to establish that time is of the essence? First of all, I have at least four items. Number one, time was of the essence by express language in the earlier stipulation, both as to payments— The stipulation was like the first thing after the lease, right? You had the lease, then you had the stipulation. The stipulation came like five years later, after the tenant was in default. It's the first writing that modified the lease. That's correct. It said, okay, we're giving you these rent breaks, we're taking real estate taxes out of the lease, but listen, you better comply going forward. But it didn't say, listen, you must comply. What's the wording that made time of the essence? The words, time is of the essence. And what it said was, actually, time is of the essence within five business days grace period for all obligations under this lease, except for the vacate date and payment of rent. For that, there wasn't even a grace period. So you have express language that says time is of the essence. Not only that, under the guarantee, there was a structure where there was what's called the noticed vacate date and the actual vacate date. And if the tenant didn't leave by the noticed vacate date, there were consequences going forward. Of course, the tenant was still liable for retrospective, which is all we're seeking here. But the tenant was going to be liable until it actually left for double rent. We're not seeking to enforce that, but the point I'm making here is the parties made very clear that there were going to be consequences, even if you're one day late. Third, why is time of the essence is because under New York law, express conditions must be literally performed. There's no concept of substantial performance or material performance for an express written condition. And there's no doubt that that's what we have here. We have express written conditions. Is that in the landlord-tenant context only? No, actually in every contract context, including landlord-tenant. And Oppenheimer is a case we cite in our brief. That was a question of whether there was a valid sublease in force or not. And the tenant had an obligation to. You're arguing you have a right, and your adversary is arguing that equity has a role in this. What role does equity have in this? And if it doesn't have any, why not? Equity's only role is that my client's name is called for equities. But other than that, it doesn't have any applicability here because. That's what all the landlords are called in New York. That's right. I'm not sure it's a one-to-one relationship. Right. But the reality here is that there's no forfeiture because, as Your Honor pointed out in your questioning, all that we're talking about here is the contracted for consequence of the tenant not meeting a condition for relief and release of liability. We are not saying that you forfeit some kind of asset that's an escrow or that you have to pay something in the future. Your position is that if the original lease had been not modified by any concessions by your client, what you're seeking to collect is exactly what the rent plus taxes would have been under the original lease. That's correct. Up to the date of payment. That's correct, which is why this is very easily disposed of on the forfeiture point. I think, frankly, even if we did seek going forward, I would have very good contractual arguments. But to say that there's a forfeiture here for all that's really happening is that a guarantor who said, I will pay the tenant's rent, is responsible for it, can't be a forfeiture. If it pleases the Court, I'd like to move on to the points raised in my gross appeal. Go ahead. Thank you. So it's really two points. First of all, I'm the founder of a small firm. But if I can humbly say, me and the attorneys in my firm can go toe-to-toe with any lawyers here in New York. The theory is, though, that smaller firms have lower overhead than larger firms. That's not necessarily true. That's up to the judge's discretion, is it not? Well, the judge didn't discuss anything about overhead. There was no evidences to overhead. What the Court simply did was it recited a principle in the Southern District which said, here's the range for experienced lawyers in small firms. There's a question of law I only have two minutes, which I'd like to talk about, which I think is very fascinating. It recurs in virtually every landlord-tenant case and other contract cases, and that's this what's pejoratively called fees on fees. The Crear case says that in this circuit we don't allow that. Okay. So that is purporting to apply New York law, but New York law has never been spoken on by the New York Court of Appeals. Our role is to guess what it is, and if it's never been spoken on, I think this panel should probably make the same guess as the Crear panel. Well, that court didn't undertake an analysis. What's more important here, by the way, is the contract language is a little bit different than the other cases. What it says here is that the attorney's fees owed by the tenant is a component of rent. It's called additional rent. So just like taxes is recoverable, the attorney's fees is also a component of additional rent. So the fees incurred in recovering that, why shouldn't that be part of my client's recovery? In fact, not only was fees expended putting in the hours and showing the quantity, but the — Then there would be a different rule with respect to fees on fees in the real estate context than in any other context. Well, that's not necessarily — Well, you just said the reason is because the fees are deemed to be rent, and therefore the fees incurred in getting that component of rent is not really fees on fees. But that's really limited only to the real estate context. Or maybe even limited to the way this contract was written. But, of course, it's a question of contract interpretation. That's what's before this court. I would also point out that the tenant disputed our entitlement to attorney's fees. So there were two components to the application. You already went on that. But it cost my client money to prove up that point, and that portion was denied. The American rule, it's very unfair. People bear their own legal costs. Unless, of course, there's a court rule or statute or contract to the contrary, which I urge. Finally, I do think this case is worthy of New York Court of Appeals' consideration. Since they have never spoken on this issue, it comes up frequently. There has never been a cogent analysis, even by the predecessor panel in 1987. Then we're just going to get into the issue of whether they should pay fees on fees on fees, because you're going to incur fees arguing about whether you get fees on fees. Well, if that's the issue, I would waive that, because I do think this is an important issue, and I wouldn't mind another trip up to Albany. Thank you, Your Honor. I just want to ask one thing. The district court, in reducing the fees, concluded that this was a run-of-the-mill landlord-tenant case, and it didn't require the extraordinary efforts of sophisticated expert counsel. My response to that is I wish to God it had been a run-of-the-mill case. We wouldn't have had 60-page briefs. Mr. Hoffman is a very creative and intelligent lawyer. He came up with so many arguments that I never would have even thought of, forfeiture and I mean I can't even go through all of it. He put us through the mill, not the run-of-the-mill, but he put us through the mill in having to litigate this case, and it did take a lot of work, and it took a lot of smarts on Mr. Levy's part and myself in obtaining, frankly, the spectacular result that we obtained, and we think we should be rewarded for it. And, counsel, you are a member, personally, of Thor, an owner of Thor. No, I am not an owner. I have been designated a vice president for one purpose only, and that's to issue notices. I don't have an ownership interest. I'm not compensated. I have no decision-making authority, but because I am their regular counsel and frequently issue notices, I'm an authorized signatory and a vice president solely for one purpose, which is to issue notices. So the court said that Mr. Madelon is a principal of Thor, and that should enter into the analysis. Frankly, there's no record support for it because it's not true. Thank you. Thank you. Thank you, Mr. Madelon. Mr. Hoffman. The 2009 stipulation that was renegotiated gave consideration for both parties. It's true that the rent was modified, turned into a default, but the lease was reduced to a 60-day lease. This was a benefit for the landlord. The 2013 rule. You mean it's terminable on 60-day notice? On 60-day notice. By either party? Well, no, only by the landlord at that time. Then it was modified in 2013. Again, later. So what the 2013 release provided for both parties is landlord wanted the tenant to leave voluntarily without them having to be evicted. In return, they would be released for all rent obligations, past or present. The obligation for tenant to leave began only after the landlord terminated the lease because self-help and warrant, Your Honor, can only apply to a post-termination. The landlord terminated it as of May 7th. I don't remember the year, but it was May 7th, right? Well, it's May 7th. On May 8th, your client sent a letter saying we'll leave by July 7th. Then the moving van broke down and you moved on the 14th. Well, because we had a reasonable time to leave. Up to 150-day window. The tenant chose 60-day window. How could that seven days when it's acknowledged was not prejudicial cause this forfeiture of $1.8 million? I don't think there's—I think the position of your adversary is not that they were prejudiced because they don't have to show prejudice. It's their position, although of course a landlord can be prejudiced because if somebody doesn't vacate premises and they have another tenant waiting, they could be— If that were true— I have a question for you. Do you view this as a run-of-the-mill real estate case, rent case, landlord-tenant case? I thought and still think this is a run-of-the-mill case which can clearly be decided on run-of-the-mill contract principles, and I don't understand why I'm having such difficulty explaining that. Thank you very much. Thank you both. Thank you. We will reserve decision.